UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VANESSA ADAMSON,

    Plaintiff,

v.                                           Case No:   6:17-cv-1896-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Vanessa Adamson, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on August 26, 2013, alleging disability beginning September 30, 2011. (Tr. 64, 172). Plaintiff's application was denied initially, and upon reconsideration. (Tr. 52-79). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Elizabeth C. Palacios (the "ALJ") on June 12, 2015. (Tr. 10-51). On December 18, 2015, the ALJ entered a decision finding that Plaintiff was not under a disability from the alleged onset date of September 20, 2011, through her date last insured, December 31, 2014. (Tr. 83-100). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on September 7, 2017. (Tr. 1-7). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on November 2, 2017.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 30, 2011, through her date last insured of December 31, 2014. (Tr. 85). At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, obesity, and affective disorder. (Tr. 85). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that

meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 88).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work, as defined in 20 CFR 404.1567(a), except as follows: limited to the performance of simple routine, repetitive tasks, or unskilled work; and every two hours requires five minutes to change position, but would remain on-task.

(Tr. 89). At step four, the ALJ found that Plaintiff, through the date last insured, was unable to perform her past relevant work as a case aide and receptionist. (Tr. 97-98).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant number in the national economy that should could have performed through her date last insured. (Tr. 98). Relying on the testimony of a vocational expert, the ALJ identified the following jobs: addresser, food and beverage order clerk, and microfilm document preparer. (Tr. 98-99). The ALJ concluded that Plaintiff has not been under a disability from September 30, 2011, through the date last insured, December 31, 2014. (Tr. 99).

## II. Analysis

Plaintiff raises a single issue on appeal: whether the ALJ erred by according little weight to treating neurologist Gary Weiss, M.D. (Doc. 12 p. 17-25). Plaintiff contends that the reasons the ALJ gave for giving only little weight to Dr. Weiss' opinion were conclusory and do not constitute good cause. (Doc. 12 p. 19-20). Plaintiff contends that Dr. Weiss' notes indicating normal clinical findings pertaining to gait, station, motor strength, reflexes and sensation, do not undermine his opinion concerning the functional limitations caused by Plaintiff's migraine

headaches. (Doc. 12 p. 20). In response, Defendant argues that substantial evidence from the record as a whole supports the ALJ's rejection of Dr. Weiss' opinion. (Doc. 12 p. 25-31).

The Court begins with a review of the medical evidence from Dr. Weiss. The record shows that on January 9, 2013, Plaintiff had her first neurologic evaluation by Gary Weiss, M.D. (Tr. 485). Plaintiff reported chronic fatigue, sinusitis, chronic infections, chronic inflammations, low hormone levels, and chronic insomnia. (Tr. 485). She reported sleeping 20 hours per day. She reported migraines and depression since the age of 9. She reported being diagnosed at the Mayo Clinic with fibromyalgia, chronic migraines, and a sleep disorder. (Tr. 485). She also reported symptoms of brain fog, unable to remember words, inability to comprehend, and inability to walk a straight line. She reported being unable to drive due to her condition. Plaintiff reported the headaches start out as a sinus headache and then proceed to a migraine. (Tr. 485). Plaintiff reported intermittent cervical pain that is localized without numbness or tingling. (Tr. 486). Plaintiff also reported intermittent thoracic pain and no lumbar pain. Plaintiff reported pain in her feet so bad at times she has to hold on to objects to walk. (Tr. 486). On exam, Plaintiff weighed 280 pounds with a BMI of 38. (Tr. 488). She admitted some depression about her medical condition, but her mental status was normal. (Tr. 488). Motor strength, reflexes, and strength were normal in all four extremities. (Tr. 488). The remaining neurological examination was normal, including cranial nerve and cerebellar testing. (Tr. 488). Dr. Weiss diagnosed (1) Chronic illness – may be chronic inflammatory response syndrome; (2) Severe fatigue; (3) Weight gain – may be from steroids; (4) Possible Addison's disease; and (5) rule out neurologic disease. (Tr. 489).

On February 7, 2013, Plaintiff returned to Dr. Weiss reporting sleeping 17 hours a day (Tr. 481). She was fatigued and weak. She could not afford testing. Her headaches ceased since starting Levaquin. She still had brain fog. Her memory was poor. She had difficulty word-finding in

conversation. She had chronic coughing. She had extreme fatigue. Plaintiff reported severe insomnia without benefit from CPAP. She had depression and anxiety (Tr. 481). Motor strength, reflexes, and strength were normal in all four extremities (Tr. 483). Dr. Weiss diagnosed (1) Chronic illness; (2) Severe fatigue; (3) Weight gain; (4) Possible Addison's disease; and (5) Rule out neurologic disease. (Tr. 484).

On March 04, 2013, Plaintiff reported continued weakness and fatigue but improvement in her headaches while on medication. (Tr. 471). Her neurological examination was normal. (Tr. 473). Dr. Weiss diagnosed (1) Chronic illness; (2) Severe fatigue; (3) HNP at C5-6; (4) Weight gain; (5) Possible Addison's disease; (6) Headaches – improved with Levaquin; and (7) Rule out neurologic disease (Tr. 474).

On March 28, 2013, Plaintiff reported to Dr. Weiss that she had insomnia, fatigue, and intermittent neck pain but no headaches (Tr. 465). An MRI and MRA of the brain were normal (Tr. 467-68). Her diagnoses remained unchanged (Tr. 468).

On April 08, 2013, Plaintiff reported sleeping 18-20 hours per day to Dr. Weiss (Tr. 461). When awake, she experiences chronic fatigue. She denied headaches, nausea, vomiting, dizziness. Her balance had improved. Plaintiff reported intermittent neck pain. Her memory was poor. She was thirsty all the time. She had frequent urination (Tr. 461). She reported feeling poorly (malaise) and recent weight change (Tr. 462). She reported dysphagia (difficulty swallowing). She reported anxiety, depression and sleep disturbance. (Tr. 462). She had neck pain. Motor strength, reflexes, and strength were normal in all four extremities. (Tr. 463). Her neurological examination was normal including mental status, cranial nerve, and cerebellar testing. (Tr. 463). Dr. Weiss diagnosed (1) Chronic illness – suspect fibromyalgia; (2) Severe fatigue; (3) Sleeping a lot but it

is not helping; (4) Depression; (5) HNP at C5-6; (6) Weight gain; (7) Possible Addison's disease; and (6) Headaches – improved with Levaquin. (Tr. 463-64).

Plaintiff returned to Dr. Weiss in June 2013 and reported that her migraines had improved and reduced due to the treatment she received at the Mayo Clinic, but she currently had a headache. (Tr. 457). The neurologic examination showed normal mental status, cranial nerve, and cerebellar testing. (Tr. 459).

On October 14, 2013, Dr. Weiss noted Plaintiff reported "not doing well". (Tr. 447). Plaintiff stated "[h]er migraines are daily and debilitating". (Tr. 447). The Mayo Clinic referred her to a 3 week rehab but offered no solution for the chronic migraines. (Tr. 447). The migraines cause blurred vision, jaw and teeth pain, dizziness, and nausea. The neck pain was constant radiating into the bilateral shoulders. Plaintiff was sleeping well. Plaintiff had anxiety and depression. Plaintiff had fatigue (Tr. 447). Her neurological examination showed normal mental status, cranial nerve, and cerebellar testing (Tr. 449). Dr. Weiss diagnosed chronic illness–may be chronic inflammatory response syndrome–fibromyalgia–diagnosis confirmed at the Mayo Clinic. (Tr. 450). They also identified a MTHFR gene3and AATD phenotype causing chronic illness, cirrhosis, and pulmonary diagnoses. Dr. Weiss also noted Plaintiff was sleeping better but it was not helping the severe fatigue. Dr. Weiss opined the depression was better. Dr. Weiss diagnosed HNP at C5-6. She lost 50 pounds. Dr. Weiss diagnosed daily migraine headaches with muscle tension and sinus pain as well. (Tr. 450). Dr. Weiss agreed with the 3 week pain clinic at Mayo (Tr. 450).

On April 28, 2014, Plaintiff returned to Dr. Weiss complaining of a severe migraine. (Tr. 552). She reported constant headaches. The pain level was 10/10. She gets blurred vision. She also gets neck pain radiating into her shoulders. Plaintiff reported sleeping well but still having extreme

fatigue. (Tr. 552). Dr. Weiss' assessment did not change, and he prescribed Topamax for headache prevention (Tr. 555). Dr. Weiss opined Plaintiff was TTD (temporary total disability) and likely PTD (permanent total disability). (Tr. 555). Dr. Weiss agreed with Plaintiff having a roommate to help her out at home. (Tr. 555).

In May 2014, Plaintiff reported to Lana Meyer, a ARNP at Dr. Weiss' office, that she had constant migraines including a current headache that had lasted for three weeks. (Tr. 547). The neurological examination was normal, and Nurse Meyer increased Plaintiff's Topamax. (Tr. 550). Plaintiff had similar symptoms and examination in July 2014. (Tr. 564-69). She had a mildly abnormal MRI of the brain, but a normal MRA. (Tr. 570, 579).

Plaintiff continued to receive treatment from Dr. Weiss after her December 31, 2014 date last insured. In February and April 2015, Plaintiff returned to neurologist Dr. Weiss for treatment. (Tr. 641, 646). She reported increase in depression. Plaintiff reported being in bed for the last nine days. Plaintiff reported that if it wasn't for her roommate actually bringing her a tray of food, she would not eat. (Tr. 641). Plaintiff reported increase in migraines. (Tr. 641, 646). Dr. Weiss opined "[Plaintiff] is clearly PTD" (permanently and totally disabled). (Tr. 641, 645). Dr. Weiss noted Plaintiff reported being in 3 car accidents – "all due to lack of concentration and focus on her part". (Tr. 641). Plaintiff reported laying in a dark room for relief from the constant migraines. Plaintiff noted short term memory problems as well as brain fog. She is unable to say what she is thinking. Dr. Weiss' diagnoses did not change. (Tr. 644-45, 649). Dr. Weiss noted nothing was helping much. Dr. Weiss opined that he doubted Plaintiff will have much improvement. (Tr. 644-45).

On May 7, 2015, treating neurologist Gary Weiss, M.D. completed a medical assessment form that detailed Plaintiff's limitations on or before December 31, 2014. (Tr. 631-32). Specifically, Dr. Weiss opined Plaintiff could sit less than two hours in an 8-hour work day with

- 9 -

normal breaks. (Tr. 631). Dr. Weiss also opined Plaintiff could lift no more than 5 pounds occasionally. (Tr. 631). Dr. Weiss opined Plaintiff's medications cause impaired concentration and drowsiness. (Tr. 631). Dr. Weiss opined Plaintiff's symptoms would likely cause the need to take more than 4 unscheduled breaks during an average 8-hour workday. (Tr. 632). In addition, Dr. Weiss opined Plaintiff would be absent from work more than 2 days per month on average. In support, Dr. Weiss listed the diagnoses from the Mayo Clinic (chronic illness, fibromyalgia, MTHFR gene and AATD). (Tr. 631). In further support, Dr. Weiss noted Plaintiff has excessive daytime fatigue, severe insomnia, increased depression and anxiety, diminished appetite, diminished short-term memory, blurred and double vision, dizziness, vomiting, and nausea. (Tr. 632).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).

The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the Court finds that the ALJ erred by failing to provide good cause for giving only little weight to Dr. Weiss' opinion. In her decision, the ALJ rejected Dr. Weiss' opinion on the basis that it is "replete with inconsistencies." (Tr. 94). Yet, as Plaintiff notes, the ALJ fails to discuss the inconsistencies. Reviewing Dr. Weiss' treatment notes and opinion, it is not obvious to this Court what these consistencies are. Thus, the Court finds that the ALJ's rejection of Dr. Weiss' opinion on the basis of being inconsistent does not constitute good cause for rejecting Dr. Weiss' opinion.

The ALJ further rejected Dr. Weiss' opinion on the basis that his treatment notes fail to support the severity of the mental and physical limitations he assessed. (Tr. 94). The ALJ noted that

> despite the claimant's allegations of pain and discomfort, the claimant's gait and station were normal, including tandem, toe, and heel walking. The claimant's motor strength was normal and symmetric in all four extremities without evidence of atrophy or fasciculation. The claimant's reflexes were normal and symmetric in the upper and lower extremities with no pathological reflexes. Additionally, the claimant's sensation was intact. The claimant's cerebellar testing and cerebrovascular examination were within normal limits (Exhibits 7F, 8F, 13F, l4F, 15F, l7F). As such, the doctor's opinion contrasts with his own findings on examination.

(Tr. 94). While this evidence could potentially constitute good cause for rejecting Dr. Weiss' physical limitation findings, it does not undermine Dr. Weiss' opinion that Plaintiff would need to take more than four unscheduled breaks in an average eight-hour day and would be absent from work more than two days per month due to her chronic fatigue and daily migraines. As Plaintiff notes, there is no evidence to support the suggestion that a normal gait, station, motor strength,

reflexes, and sensation upon examination are inconsistent with functional limitations assessing breaks and absences from work due to migraines.

Finally, the ALJ rejected Dr. Weiss' opinion on the basis that

> Dr. Weiss as well as the claimant's primary care physician relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

(Tr. 94). The fact that Dr. Weiss relied on Plaintiff's subjective complaints does not undermine his opinion. First, there does not seem to be an actual objective test for diagnosing migraines. *See Diagnosis,* The Migraine Trust; https://www.migrainetrust.org/living-with-migraine/seeking-medical-advice/diagnosis/. Second, despite claiming that there exist good reasons for questioning the reliability of Plaintiff's subjective complaints elsewhere in the decision, it is again unclear to what the ALJ refers. The decision contains no discussion of evidence showing that Plaintiff's subjective complaints were not credible beyond normal examination findings. As explained above, however, these findings are not probative as to the severity and extent of Plaintiff's limitations due to migraine headaches.

As a treating physician with a lengthy treatment relationship with Plaintiff, Dr. Weiss' opinion was entitled to substantial weight unless the ALJ provided good cause for rejecting the opinion. Here, the Court finds that the ALJ failed to do so, particularly regarding the ALJ's limitation findings concerning Plaintiff's limitations concerning breaks and absences from work due to migraines. Upon remand, the ALJ shall re-evaluate Dr. Weiss' opinion and explain the weight given to each of his limitation findings and the reasons therefor.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the

Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 15, 2019.

_/s/ Douglas N. Frazier_
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties